DIVISION OF SOCIAL SERVICES, Department of Human Services, State of Arkansas *v.* OAK HILLS CORPORATION

85-80                                                          695 S.W.2d 836

Supreme Court of Arkansas
Opinion delivered September 23, 1985

*Carolyn Parham*, for appellant.

*Smith, Jernigan & Smith*, by: *George O. Jernigan, Jr.*, for appellee.

DAVID NEWBERN, Justice. The appellant Division of Social Services (Social Services), reached an administrative decision requiring the appellee, Oak Hills Corporation, to pay back to it $23,169.00 because it determined it had overpaid Oak Hills Corporation in Medicaid reimbursements. Oak Hills Corporation appealed the decision to the circuit court. The court reversed the Social Services decision, and Social Services has appealed. There was no dispute at the trial court, and there is none here, about the facts. Rather than the usual issue as to whether the decision of the agency is supported by substantial evidence, we must decide whether the trial court was correct in determining that the agency's decision was arbitrary, Ark. Stat. Ann. § 5-713(h)(6) (Supp. 1985), because it was based on an ambiguous regulation and not consistent with its previous interpretation of its regulation and in light of the reason given by the agency for its decision. We find the trial court was correct, and thus we affirm.

In 1979, Bob Welch was administrator of a nursing home run by Oak Hills Corporation. Welch owned an interest in Oak Hills Corporation. The nursing home property was owned by Oak Hills Manor, Inc., in which Welch also owned a substantial interest. Oak Hills corporation leased the nursing home from Oak Hills Manor, Inc. Because of Welch's ownership interest in both corporations, the lease was correctly deemed by Social Services to be a lease from a "related party."

An agreement between Social Services and Oak Hills Corporation specified that in return for Oak Hills Corporation furnishing nursing home services to persons eligible for Medicaid benefits, Social Services would reimburse Oak Hills Corporation "in amounts and under conditions determined by the Division [Social Services] and in accordance with the principles of the State's Cost Related Reimbursement System." The parties agreed: "To follow and comply with all Federal and State Laws and Federal and State Regulations to include 42 C.F.R. Sub Chapter B, Part 405, 449, and 450 and the Arkansas Social Services Reasonable Cost-Related Reimbursement Manual."

The Arkansas Manual, to which the agreement referred, provided:

## § 3-6 *COSTS OF RELATED ORGANIZATIONS*

(a) Cost of service and supplies furnished by organizations related to the Facility by Common ownership by five percent (5%) or more equity, contract, control, interlocking directorates or officers will be recognized, at the cost to the related organization.

(b) Related organization can furnish services and supplies to a facility under the prudent buyer concept, provided the cost of such services and supplies are consistent with the costs of such items furnished by independent third party Providers in the same geographic area.

(c) These requirements apply to the sale, transfer, lease-back or rental of the property, plant or equipment or purchases of services of any facility or organization.

Social Services argues that this language limits lease payment reimbursement to Oak Hills Corporation to no more than the cost to Oak Hills Manor, Inc., incurred in providing the building. Oak Hills Corporation argues the language is ambiguous at best, and that Social Services should be responsible to reimburse reasonable "prudent buyer" rental because subsection (b) permits it and because Social Services had previously interpreted that language as permitting it.

We have no doubt that the manual provision was ambiguous. Subparts (a) and (b) conflict. It is equally clear that there is no ambiguity in 42 C.F.R. § 477.284 (1977) which says reimbursement to the services provider is limited to the lower of costs to the related organization (Oak Hills Manor, Inc.) or price of comparable services purchased elsewhere. This specific ambiguity in the state manual was recognized in *State of Arkansas* v. *Heckler*, No. C-84-464 (W.S.D.C., W.D. Ark. 1984), in which the Arkansas manual provision was compared with the federal provision cited above.

While Social Services argues that Oak Hills Corporation agreed generally to follow both the federal and state law, it does not contend that the manual provisions were not controlling. Rather, it argues we should interpret the Arkansas manual language to mean what the federal regulation says because 42 C.F.R. § 447.284, which was not mentioned specifically in the

agreement, ". . . was the standard the appellant [Social Services] had to use when it drafted its State Plan. . . ." This argument is at best weak, especially when we look to the manner in which the state manual had previously been applied.

In the hearing which resulted in the agency's decision, Tom Gray, a Social Services auditor, stated that when he, in 1982, disallowed the portion of the 1979 lease payment in excess of cost to Oak Hills Manor, Inc., he was aware it was "a reversal of previous actions." He testified that the state manual had been in effect since 1978, that he was aware of § 3-6(b) allowing reimbursement to a "related party" of a reasonable amount under the prudent buyer concept, and that up until the time he audited Oak Hills Corporation in 1981 "reasonable" leases had been allowed. Ronald Anderson, another Social Services auditor, also testified without contradiction that he audited the nursing home in 1979 and that while it was noted in the audit that the related party lease existed he did not show any disallowance of it. Although he testified it was not his function to disallow a reimbursement on the related party basis, he did not know of any during the 1978 through 1980 period that had been disallowed.

Social Services presented no evidence showing that it had interpreted its regulation from 1978 until 1981 in a manner which would restrict the lease reimbursement of Oak Hills Corporation to the cost incurred by Oak Hills Manor, Inc.

■■ If an administrative agency's adjudication is "arbitrary, capricious, or characterized by an abuse of discretion," it is proper for the court to which it is appealed to reverse. Ark. Stat. Ann. § 5-713(h)(6) (Supp. 1985). We agree with the circuit court that it was arbitrary for Social Services to interpret its ambiguous regulation in a way which would have permitted the reimbursement now disallowed and then to reinterpret it inconsistently and without good reason. The problem was caused by the ambiguity of the agency's regulation. It was arbitrary for Social Services to lay the burden on Oak Hills Corporation. The Social Services decision states as a finding of fact that its regulation, i.e., the manual provisions discussed above, required limitation of reimbursement to the "lower of either (1) the costs of ownership, or (2) the costs for comparable services rendered by third parties in the same geographical area." Although the regulation was changed

to read that way in 1981, that is not what it said in 1979. For Social Services to say, as it did in its decision, that the old regulation's intent was clear because of what the new one says is not reasonable. This is the kind of "willful and unreasoning action" of which we spoke in *Partlow* v. *Arkansas State Police Commission*, 271 Ark. 351, 609 S.W.2d 23 (1980). Compare Note, 87 Harv. L. Rev. 629, 651-653 (1974).

Affirmed.

PURTLE, J., not participating.